**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

FILED
IN CLERKS OFFICE

2006 JUL 18  A 10: 38

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| DANA-FARBER CANCER INSTITUTE, INC. a/k/a THE JIMMY FUND | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BOC GROUP, INC. d/b/a BOC GASES | ) **Case No. 1:04-CV-12612-RWZ** ) |
| Defendant/Third-Party Plaintiff, | ) ) ) |
| v. | ) ) |
| TAYLOR-WHARTON, HARSCO CORPORATION, GAS & FLUID CONTROL GROUP and PACER DIGITAL SYSTEMS, INC. | ) ) ) ) ) |
| Third-Party Defendants. | ) ) ) |

## AFFIDAVIT OF JOHN J. WEINHOLTZ

I, John J. Weinholtz, do hereby depose and say as follows:

1.      I am a partner at Nixon Peabody LLP, counsel for third-party defendants Taylor-Wharton, Harsco Corporation, Gas & Fluid Control Group ("Taylor-Wharton") and Pacer Digital Systems, Inc. ("Pacer"), in this action. I am admitted *pro hac vice* in this action.

2.      I make this affidavit in support of Taylor-Wharton and Pacer's motion to: (1) compel plaintiff Dana Farber Cancer Institute, Inc. ("Dana Farber") to produce the subject electrical control panel in its expert's possession to Taylor-Wharton and Pacer's expert, Donald Galler, P.E., to be examined under a microscope by Mr. Galler; and (2) to grant leave to allow Mr.

Galler to submit a written expert report based on such microscopic examination within a reasonable time after such examination.

3.    Expert discovery remains open in this case until September 29, 2006. Counsel for Dana Farber has refused, without basis, to turn over the subject electrical panel so that Mr. Galler can perform his microscopic examination. We advised all counsel of our intention to have Mr. Galler examine the panel, and we provided a protocol for the examination, on June 30, 2006. Our plan was to conduct the examination in early-to-mid July so that we could provide Mr. Galler's expert report by July 21, 2006, the agreed-upon date for Taylor-Wharton and Pacer to provide their expert disclosures. Counsel for Dana Farber initially said that he would object to the examination, but then said he would speak with his client and get back to me. When I called counsel's office last week, I was told he was out on vacation for the entire week, but that his office would try to get a message to him. Because I have not heard back from counsel, I have brought this motion to call this issue to the Court's attention and request the Court's intervention and relief.

4.    This a subrogation action brought by Dana Farber to recover the cost of certain research cells that were damaged when the cryogenic freezer in which they were stored allegedly failed in August of 2002 and caused the cells to become unfrozen. The cryogenic freezer was sold to Dana Farber by defendant BOC Group, Inc., d/b/a BOC Gases ("BOC"), three years earlier, and BOC had made a service call on the freezer just one week before the alleged failure. Taylor-Wharton manufactured the freezer and Pacer manufactured the electrical control panel that controlled the freezer.

- 2 -

5.     Dana Farber filed a Complaint against BOC on December 15, 2004, alleging causes of action in negligence, breach of contract/warranty and breach of warranty/strict liability. On February 2, 2005, BOC filed its Answer to the Complaint and Third-Party Complaint against Taylor-Wharton and Pacer alleging causes of action for contribution, common law indemnity and contractual indemnity.

6.     Up until now, the parties have been generally cooperative and have proceeded through discovery without any disputes. Indeed, the parties worked together to schedule and conduct upwards of 15 fact witness depositions. Also, of particular note, the parties twice agreed to extend the due date for expert disclosures to allow sufficient time for Dana Farber's expert witnesses to conduct their testing of the subject control panel. (See docket items 41 and 42.)

7.     It should be noted that at all times through out this litigation, Dana Farber has had possession of the Pacer electrical control panel that was in the cryogenic freezer at the time of the alleged failure. Dana Farber's expert witnesses, Jeffrey Levine, Ph.D., and James Karon, an electrical engineer, conducted two inspections and performed testing on the subject electrical control panel on April 5 and April 20, 2006 at their expert's lab. Dana Farber then issued expert reports from these witnesses on May 3, 2006.

8.     In the interim, the parties agreed to proceed to voluntary mediation, agreeing on Clyde Hanyen as a mediator. The mediation was scheduled for June 21, 2006.

9.     Having reviewed Dana Farber's expert reports, my clients decided it would be worthwhile to conduct a microscopic examination of one area on the circuit board of the subject

control panel that the Dana Farber experts questioned in their reports – the area of the crystal oscillator. Significantly, Mr. Karon states at page 11 of his report that "the most likely cause of the failure" of the freezer in August of 2002 was "the failure of the crystal oscillator circuit."

10.     Prior to the issuance of the Dana Farber expert reports, the crystal oscillator had not been identified as an alleged failure point on the circuit board of the controller.

11.     Approximately two weeks prior to the scheduled mediation, I called Dana Farber's counsel, Peter Rossi, and told him that my clients wanted to do some expert testing but would prefer to postpone the testing until after the mediation, since the cost of such testing would be unnecessary if we could get the case settled at the mediation. Under the Scheduling Order then in place (Docket Item #42), Taylor-Wharton and Pacer were required to serve their expert disclosures on July 5, 2006, just two weeks after the mediation. Therefore, I asked Mr. Rossi to agree to a brief two week extension of time for service of expert disclosures to July 21, 2006 – which I believed would provide sufficient time to complete the testing in the event the case was not resolved at mediation.

12.     Mr. Rossi agreed to the extension, as did counsel for BOC, Michael Giunta. On June 19, 2006, I sent a letter (copy annexed as Exhibit A) confirming everyone's agreement to the extension.

13.     Unfortunately, the parties were unable to reach a settlement at the June 21, 2006 mediation. Thus, on June 30, 2006, I sent a letter to all counsel advising that we had made arrangements to conduct a microscopic examination of the subject control panel by Donald

- 4 -

Galler, P.E., at his lab at MIT and I attached a protocol explaining exactly the specific examination we wanted to conduct. (A copy of my June 30, 2006 letter and the protocol are annexed as Exhibit B.)

14.    Dana Farber's counsel, Mr. Rossi, apparently displeased at the settlement discussions at the mediation (which he called "futile"), sent an e-mail stating that he had only agreed to grant an extension for Taylor-Wharton and Pacer to serve their expert reports, but that he did not and would not agree to allow any examination of the control panel. (A copy of Mr. Rossi's e-mail is annexed as Exhibit C.)

15.    I sent Mr. Rossi an e-mail first thing on the morning of Wednesday, July 5, 2006, reminding him of our prior discussions. I asked him to reconsider his position and call me to discuss the matter to see if we could avoid unnecessarily burdening the Court with motion practice. (A copy of my July 5, 2006 e-mail is annexed as Exhibit D.)

16.    I then called Mr. Rossi on Thursday, July 6, 2006. He again expressed how displeased he was with the settlement discussions. He expressed that he didn't want to go to the expense of having his experts attend the further examination. I told him it wasn't necessary for his experts to attend and that my expert would provide all parties with photos taken with the microscope. The call ended with Peter stating that he would talk with his client and he would advise me if his client would agree to the microscopic examination or still intended to oppose it.

17.    I did not hear back from Mr. Rossi on Friday, July 7th, so I called his office on Monday, July 10th. His office advised me that he was out on vacation all week. I explained that I was

- 5 -

waiting to hear back from him on this case. His office said that they would try to contact him
and have him call me back. As of the date of this affidavit, I still have not heard back from Mr.
Rossi. Thus, I can only conclude that Dana Farber is standing by Mr. Rossi's objection to the
examination of the panel by Mr. Galler.

18.     Taylor-Wharton and Pacer are entitled to have their expert, Mr. Galler, examine the
subject control panel under a microscope to examine the very area of the panel that Dana
Farber's experts have called into question. Mr. Galler advises that this examination can be
completed in one day. This examination could not have been done previously when Dana
Farber's experts examined and tested the panel because their lab does not even have the type of
powerful microscope that Mr. Galler has at MIT. Furthermore, as noted above, such a
microscopic examination was not even contemplated until after Dana Farber served its expert
reports.

19.     Under the current Scheduling Order, expert discovery remains open until September 29,
2006. Thus, this microscopic examination can be done, and Mr. Galler can issue his expert
report and he can be made available for deposition, without having to modify the outside dates
of the Court's current Scheduling Order. Taylor-Wharton and Pacer are prepared to issue their
Rule 26 expert disclosures as to experts other than Mr. Galler on the date they previously agreed
to do so -- July 21, 2006.

20.     I understand that Mr. Rossi is disappointed that this case has not been resolved, but that is
no basis for refusing to allow expert discovery to which Taylor-Wharton and Pacer are entitled.

- 6 -

21.     WHEREFORE, Taylor-Wharton and Pacer respectfully request that this Court issue an order: (i) compelling Dana Farber to produce the subject electrical control panel in its expert's possession to Taylor-Wharton and Pacer's expert, Donald Galler, P.E., to be examined under a microscope by Mr. Galler; (ii) granting leave to allow Mr. Galler to submit a written expert report based on such microscopic examination within a reasonable time after such examination; and (iii) granting such other and further relief as the Court deems just and proper.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 17th DAY OF July, 2006:

John J. Weinholtz



# NIXON PEABODY LLP
ATTORNEYS AT LAW

Key Towers at Fountain Plaza
40 Fountain Plaza
Suite 500
Buffalo, New York 14202
(716) 853-8100
Fax: (716) 853-8109

John J. Weinholtz
Direct Dial: (716) 853-8141
E-Mail: Jweinholtz@nixonpeabody.com

June 19, 2006

Michael P. Giunta, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210

Peter G. Rossi, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

> RE:    Dana-Farber Cancer Institute, Inc. v. BOC Group, Inc. v. Taylor-Wharton, et al.
> NP File No.: 082150.131

Dear Counselors:

Confirming my telephone conversations with both of you last week, you both have agreed to extend the Third-Party Defendants' time to serve their Rule 26 expert disclosures to and including July 21, 2006. Thank you for your courtesy and cooperation.

Very truly yours,

John J. Weinholtz

JJW/kl

ALBANY, NY • BOSTON, MA • BUFFALO, NY • GARDEN CITY, NY • HARTFORD, CT • LOS ANGELES, CA • MANCHESTER, NH • McLEAN, VA • NEW YORK, NY
ORANGE COUNTY, CA • PALM BEACH GARDENS, FL • PHILADELPHIA, PA • PROVIDENCE, RI • ROCHESTER, NY • SAN FRANCISCO, CA • WASHINGTON, DC



# NIXON PEABODY LLP

ATTORNEYS AT LAW

Key Towers at Fountain Plaza
40 Fountain Plaza, Suite 500
Buffalo, New York 14202-2224
(716) 853-8100
Fax: (716) 853-8109

John J. Weinholtz
Direct Dial: (716) 853-8141
E-Mail: jweinholtz@nixonpeabody.com

June 30, 2006

**VIA FAX & U.S. MAIL**
Michael P. Giunta, Esq.
Donovan Hatem LLP
Two Seaport Lane
Boston, MA 02210

Peter G. Rossi, Esq.
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

> RE:   Dana-Farber Cancer Institute, Inc. v. BOC Group, Inc. v. Taylor-Wharton, et al.
>        NP File No.: 082150.131

Counselors:

Attached is a protocol for further examination of the Mark 2L controller circuit board and crystal, which protocol has been prepared by Donald Galler, P.E., at MIT. Mr. Galler advises that items 1 through 5 can be done at his lab at MIT, but item 6 will have to be done off site. I will call next week to discuss dates for this examination.

Very truly yours,

John J. Weinholtz

JJW/kl
Encl.

10035986.1

Protocol for Examination and Testing of Microprocessor Crystal
Taylor – Wharton

1. Visual Examination and photograph of printed circuit (PC) board crystal mount area

2. Examine / photograph crystal lead solder joints on upper and lower surfaces of PC Board using stereo microscope

3. Unsolder crystal leads and remove crystal from PC board

4. Cut and remove plastic sleeving from crystal

5. Examine crystal lead attachments in Scanning Electron Microscope

6. X-ray radiograph crystal using real time microfocus x-ray  (offsite)

## Weinholtz, John

**From:** Rossi, Peter [PRossi@cozen.com]

**Sent:** Friday, June 30, 2006 5:11 PM

**To:** Weinholtz, John; Michael Giunta

**Subject:** RE: DFCI Depositions

Gentlemen,

We just received a fax from Taylor/Pacer regarding further testing of the Pacer panel. This is the first we have heard of additional testing. All parties had a full and fair opportunity to participate in the preparation of the test protocol as well as the testing completed previously. Fact discovery is over. As a courtesy to John and in an attempt (futile it turns out) to facilitate settlement we agreed to an extension of the Taylor/Pacer expert reports only but did not and do not agree to further testing of the panel or any other additional fact discovery. We would like to have this matter listed for trial as soon as possible and will be contacting the court in that regard.

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.

RECYCLED

## Weinholtz, John

| | |
|---|---|
| **From:** | Weinholtz, John |
| **Sent:** | Wednesday, July 05, 2006 9:04 AM |
| **To:** | 'Rossi, Peter'; Michael Giunta |
| **Subject:** | RE: DFCI Depositions |

**Importance:** High

PETER: When I called you two weeks prior to the mediation I asked for an extension of my expert discovery time and I expressly told you that the reason for the extension was to hold off on going forward with additional expert testing to save the costs related thereto until we could see the outcome of the mediation. I told you that my clients preferred to put money toward settling the case, rather than spending money on expert testing that may be unneccessary if we can reach an agreement. While a settlement agreement has not been reached to date, my understanding is that our mediator is going to contact the parties this week to further discuss settlement. I sent the fax out on last Friday so that you would know the specific testing we intend to do if a settlement is not reached.

Also, we actually don't intend to do any testing. We merely intend to look at the circuit board of our controller under a powerful microscope, of the type which your expert did not have. This is not fact discovery; this is expert discovery, which remains open. Your expert need not even be present. We will provide you with all photographs that our expert will take with the microscope. I allowed your expert two viewings of the board, including a testing session. My expert's viewing of the board is in response to your expert's report. Until your expert issued his report, we had know idea what his findings would be, or what expert review would be needed in response thereto.

Frankly, I am surprised at the position you have taken in your e-mail, given our discussions. I do not want to burden the court with motion practice. However, I am entitled to have my expert review the circuit board in view of you expert's opinions. I would like to try to resolve this dispute short of motion practice. Please let me know when you are available today to discuss this matter. I am in the office all day today. JOHN.



John J. Weinholtz
Nixon Peabody LLP
Key Towers at Fountain Plaza
40 Fountain Plaza, Suite 500
Buffalo, NY 14202
Office: 716.853.8141
Fax: 716.853.8109
jweinholtz@nixonpeabody.com
www.nixonpeabody.com

This email message and any attachments are confidential. If you are not the intended recipient, please immediately reply to the sender and delete the message from your email system. Thank you.

**From:** Rossi, Peter [mailto:PRossi@cozen.com]
**Sent:** Friday, June 30, 2006 5:11 PM
**To:** Weinholtz, John; Michael Giunta
**Subject:** RE: DFCI Depositions

Gentlemen,

We just received a fax from Taylor/Pacer regarding further testing of the Pacer panel. This is the first we have heard of additional testing. All parties had a full and fair opportunity to participate in the preparation of the test protocol as well as the testing completed previously. Fact discovery is over. As a courtesy to John and in an attempt (futile it turns out) to facilitate settlement we agreed to an extension of the Taylor/Pacer expert reports only but did not and do not agree to further testing of the panel or any other additional fact discovery. We would like to have this matter listed for trial as soon as possible and will be contacting the court in that regard.

Notice: To comply with certain U.S. Treasury regulations, we inform you that, unless expressly stated otherwise, any U.S. federal tax advice contained in this e-mail, including attachments, is not intended or written to be used, and cannot be used, by any person for the purpose of avoiding any penalties that may be imposed by the Internal Revenue Service.

Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.